FILED '07 JUN 21 15:01 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DENNIS L. KINZER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 06-962-TC |
| v. | ) | |
| | ) | FINDINGS AND |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | RECOMMENDATION |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

COFFIN, Magistrate Judge:

## **INTRODUCTION**

Plaintiff Dennis Kinzer brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be affirmed.

1 - OPINION AND ORDER

## BACKGROUND

Kinzer was born January 24, 1942. He earned a high school equivalency diploma and worked for 26 years as a mortgage broker. Kinzer alleges he became unable to work on January 1, 2002, due to post traumatic stress disorder (PTSD), diabetes, anxiety, depression, gross impairment in thought processing and communication and memory loss. These conditions cause low motivation, hopelessness and deficits in concentration and social functioning.

Kinzer satisfied the insured status requirements for a claim under Title II through December 31, 2003, and must establish that he was disabled on or before that date to prevail on his claim. 42 U.S.C. § 423(a)(1)(A). See Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).

The ALJ found that Kinzer's ability to work is limited by the combined impact of degenerative disc disease, diabetes mellitus, PTSD and dysthymia. The ALJ determined that Kinzer retained the residual functional capacity (RFC) to perform a wide range of work at the light level of exertion with the following additional limitations:

> He is able to occasionally climb ladders and occasionally use scaffolds. Stooping, kneeling and crouching can also be performed on an occasional basis. He is unable to crawl or frequently reach overhead and he can walk for less than one mile at one time. The Claimant also requires an opportunity to get off his feet as needed...
>
> The claimant is unable to consistently maintain a pleasant demeanor in public relations with institutional contacts and he has difficulty tolerating quasi-political "give and take" with business contacts.

Tr. 27.[1]

---

[1]Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

The ALJ found that Kinzer's RFC precluded work-related activities required to perform his past work, but did not preclude other jobs existing in significant numbers the national economy. He drew examples of such work from the testimony of a vocational expert (VE), including mortgage account clerk, direct mail clerk and billing clerk. The ALJ concluded that Kinzer was not disabled within the meaning of the Social Security Act.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence and resolving ambiguities. Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d at 1193. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." Andrews v. Shalala, 53 F.3d at 1039-1040.

## DISCUSSION

Kinzer challenges the ALJ's itemization of severe impairments at step two of the decision-making process. He challenges the ALJ's determination at step three that his impairments are not

equivalent to any of the presumptively disabling impairments in the regulatory Listing of Impairments. He also contends the ALJ failed to properly evaluate the evidence of his residual functional capacity. Finally, Kinzer contends the ALJ failed to elicit accurate vocational evidence from the VE.

## I.    <u>Severe Impairments</u>

Kinzer contends the ALJ failed to designate carpal tunnel syndrome and major depressive disorder as severe impairments at step two of the regulatory decision-making process described in 20 C.F.R. § 404.1520 and <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987).

At step two of the decision-making sequence, the claimant must show that he has any combination of impairments that significantly limits his ability to perform basic work activities. <u>Yuckert</u>, 482 U.S. 146. If he cannot meet this threshold burden, the Commissioner will find him "not disabled" without continuing to the remaining steps in the five-step sequence. 20 C.F.R. § 404.1520(c); SSR 85-28. It is a <u>de minimis</u> screening device to dispose of groundless claims. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996).

Kinzer's argument fails to show an error at step two because the ALJ did not deny his claim at that step. Instead, the ALJ found that he surmounted the <u>de minimis</u> severity screening by showing that he has a combination of impairments which limits his ability to perform basic work activities. The ALJ properly continued to the remaining steps of the sequential decision-making process.

After a claimant has surmounted the <u>de minimis</u> burden at step two, the regulations require the ALJ to consider the functional limitations from all medically determinable impairments in the remaining steps of the sequential evaluation process. 20 C.F.R. § 404.1523. Accordingly, the

remaining issue is whether the ALJ properly considered all the evidence of functional limitations attributable to carpal tunnel syndrome and major depression in assessing Kinzer's RFC and in the remaining steps of his decision.

Kinzer underwent a surgical carpal tunnel release in September 2001 and did not complain of symptoms to healthcare providers thereafter. He did not allege carpal tunnel syndrome in his application for benefits or the supporting reports and questionnaires. He did not indicate ongoing problems with repetitive use of his hands during his testimony. Kinzer does not now specify any medical report suggesting restrictions in function or limitations in the activities he can perform due to carpal tunnel syndrome. The ALJ could reasonably conclude from the record as a whole that Kinzer did not establish any ongoing functional limitations from carpal tunnel syndrome.

In October 2001, Gary Monkarsh, Ph.D., examined Kinzer and diagnosed PTSD and dysthymic disorder secondary to PTSD. Dr. Monkarsh noted that Kinzer had a history of major depressive disorder that appeared to be in remission. He did not identify current symptoms of major depression or note any functional limitations in addition to those associated with PTSD.

In addition, two Psychiatric Mental Health Nurse Practitioners (PMHNP) at the Veterans Administration (VA) saw Kinzer during the relevant time and assessed him with recurrent major depression. Contrary to Kinzer's present assertions, the nurse practitioners did not indicate that his major depressive symptoms were severe and did not identify any restrictions on his activities beyond those associated with PTSD.

Even assuming there was a current diagnosis of severe major depression, a diagnosis without functional limitations has no vocational significance. The mere fact that a condition has been acknowledged with a medical diagnosis does not establish functional limitations. See <u>Key v.</u>

Heckler, 754 F.2d 1545, 1549-1050 (9th Cir. 1985); Young v. Sullivan, 911 F.2d 180, 183-184 (9th Cir. 1990). The claimant has the burden of proving any limitations in his ability to do basic work activities. Roberts v. Shalala, 66 F3d 179, 182 (9th Cir 1995); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Kinzer failed to allege or present evidence of functional limitations from major depression.

In summary, the ALJ could reasonably conclude from the record as a whole that Kinzer failed to carry the burden of showing that he has significant impairment from carpal tunnel syndrome or major depression. The court finds no error in the ALJ's conclusion that carpal tunnel syndrome and major depression did not cause functional limitations in addition to those described in the ALJ's RFC assessment. Kinzer failed to carry the burden of proof with respect to additional limitations resulting from those conditions. The ALJ's interpretation of the evidence is reasonable and should not be disturbed. Andrews v. Shalala, 53 F.3d at 1039-40.

## II.    The Listing of Impairments

If a claimant's impairments are equivalent to "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity," then the claimant is presumed to be disabled at step three of the decision-making process and the ALJ need not complete the remaining steps. Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). The criteria for these listed impairments are enumerated and categorized by body system in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments).

A claimant has the burden of establishing that his combined impairments are medically equivalent to a listed impairment. Sullivan v. Zebley, 493 U.S. 521, 531 (1990); Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); 20 C.F.R. § 404.1526. A finding of equivalence must be based

on medical evidence only.  Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001); 20 C.F.R. § 404.1529(d)(3).

Kinzer asserts that the ALJ performed an inadequate analysis of whether his combined impairments were medically equal to one or more unspecified conditions in the Listing of Impairments.  The ALJ considered Kinzer's impairments in combination and determined that his medical findings did not satisfy the criteria for the following Listings: 1.04 (Disorders of the Spine); 9.08 (Diabetes Mellitus); 12.04 (Affective Disorders); or 12.06 (Anxiety-Related Disorders).

A claimant must offer some theory as to how his impairments combine to equal a listed impairment.  Lewis v. Apfel, 236 F.3d at 514.  An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to the criteria for a listed impairment, unless the claimant presents evidence in an effort to establish equivalence, Id., Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

Kinzer has offered no theory, plausible or otherwise, as to how his impairments combine to medically equal a listed impairment.  He has not even specified which of the dozens of conditions in the Listing of Impairments he believes the ALJ should have considered, much less presented a theory of equivalence based on medical evidence in relation to specific criteria.  Accordingly, the ALJ did not err in concluding that Kinzer's impairments do not combine to meet or equal a listed impairment.

**III.    RFC Assessment**

If the decision-making process continues past step three, the ALJ must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations

imposed by his impairments.  In assessing a claimant's RFC, the ALJ must consider the claimant's

statements, the medical evidence and other evidence of his symptoms and limitations in accordance

with 20 C.F.R. § 404.1529 and SSR 96-8p.

Kinzer contends the ALJ improperly discredited his subjective statements, failed to give

sufficient weight to the medical opinions of two examining psychologists and two PMHNPs and

failed to give proper weight to the VA disability rating.

### A.    Kinzer's Credibility

Kinzer testified that he is prevented from working by stress, anxiety, a bad attitude, a short

temper and degenerative disc disease of the cervical spine.  He stopped working as a mortgage

broker primarily because emotional problems from PTSD made him unable to maintain working

relationships with real estate agents and representatives of institutional lenders without having angry

outbursts.  He did not have problems interacting with and taking applications from borrowers or

performing the technical requirements of the work.

Kinzer testified that he fishes a lot, camps, uses a computer, reads, takes his mother to

appointments, visits his sister, performs household tasks, cares for a number of pets and drives at

least 150 miles per week.  He described himself as antisocial, but admitted that he has no problem

shopping, attending AA meetings or interacting with his family members and friends.  He can lift

and carry 20 pounds, but cannot cut wood due to pain in his neck and back.

The ALJ adopted much of Kinzer's testimony regarding his exertional limitations and his

inability to deal consistently in a pleasant manner with business contacts.  The ALJ included

limitations in his RFC assessment reflecting Kinzer's testimony with respect to these limitations.

The ALJ rejected Kinzer's allegation that his impairments are so severe that they prevent him from doing any kind of work.

An ALJ must provide clear and convincing reasons to discredit a claimant's testimony regarding the severity of his symptoms. Dodrill v. Shalala, 12 F3d 915, 918 (9th Cir 1993); Smolen v. Chater, 80 F3d 1273, 1281-82 (9th Cir 1996). The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F3d 748, 750 (9th Cir 1995).

The ALJ may consider objective medical evidence and the claimant's treatment history as well as the claimant's unexplained failure to seek treatment or follow a prescribed course of treatment. Smolen, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge about the claimant's functional limitations. Id. In addition, the ALJ may employ ordinary techniques of credibility evaluation such as prior inconsistent statements concerning symptoms and statements by the claimant that appear to be less than candid. Id. 20 C.F.R. § 404.1529.

The ALJ considered these factors and made specific findings to support his credibility determination. He noted that Kinzer's testimony described rather normal daily activities that were not entirely consistent with his claim to be so reclusive that he would be unable to do any kind of work. Kinzer reported to a VA nurse practitioner that without the pressure of running his own business, his irritability, low motivation and poor concentration "does not interfere with his ability to make a living." Tr. 180.

In January 2003, an agency disability analyst named Joyce Elkins observed Kinzer interacting with others in a café without exhibiting any social difficulties. Kinzer's friend Michael Goldade

said that Kinzer maintained social and business relationships, was "very customer oriented" and had a "great management style." Tr. 298. These activities are not equivalent to full time work, but are clearly inconsistent with Kinzer's claim to be so socially withdrawn that any work would be impossible.

The foregoing provided an adequate basis for the ALJ to disbelieve Kinzer's assertion that his symptoms preclude all work. The record is sufficient for the court to conclude that the ALJ did discredit that claim arbitrarily. The ALJ's RFC assessment reflects reasonable conclusions drawn from Kinzer's testimony in context with the record as a whole.

B.      **Medical Opinions**

Kinzer contends the ALJ improperly evaluated the opinions of two examining psychologists and two mental health nurse practitioners.

On October 23, 2001, Dr. Monkarsh performed a PTSD evaluation including an interview and a review of Kinzer's VA claim file and medical records. Dr. Monkarsh felt that the symptoms Kinzer described met the diagnostic criteria for chronic, severe PTSD and secondary Dysthymic disorder. Dr. Monkarsh believed Kinzer suffered from severe social, industrial and emotional impairment, but did not identify specific functional limitations or restrictions on work-related activities.

The ALJ accepted Dr. Monkarsh's report and drew reasonable conclusions from it in context with the record as a whole. As result, the ALJ significantly limited Kinzer's occupational base by precluding all jobs that would require him to consistently maintain a pleasant demeanor in public relations with institutional contacts or tolerate quasi-political give and take with business contacts.

These limitations reasonably reflect Dr. Monkarsh's general findings and account for the symptoms described in Kinzer's testimony. Accordingly, the court finds no error in the ALJ's evaluation of Dr. Monkarsh's opinion.

Paul Brown, Ph.D., examined Kinzer on April 1, 2003, as part of the proceedings on his Social Security claim. He interviewed Kinzer and reviewed the report from Dr. Monkarsh and additional VA medical records. He noted that Kinzer had negative behavior initially and seemed to be impatient at times.

Dr. Brown opined that Kinzer had good judgment and could perform simple and repetitive tasks, although detailed and complex tasks might be more difficult. He did not identify any other functional limitations or restrictions in work activities. He noted Kinzer's subjective report that he did not feel he could work around other people or maintain regular attendance, but neither endorsed nor rejected those subjective assertions.

The ALJ did not reject Dr. Brown's opinion. In fact, the ALJ did not discuss Dr. Brown's opinion in his decision at all. Accordingly, the ALJ did not comply fully with the requirements of 20 C.F.R. § 404.1527, which requires the ALJ to explain the weight given to the opinions of State agency psychological consultants. This error was harmless in the present case, because the ALJ's RFC determination was entirely consistent with Dr. Brown's opinion.

The ALJ's RFC diverged only from Dr. Brown's recitation of Kinzer's subjective statements that he would not be able to work around other people or maintain regular attendance. The ALJ adequately addressed Kinzer's subjective statements when he assessed Kinzer's credibility, as described above. See Fair v. Bowen, 885 F2d 597, 605 (9th Cir 1989) (ALJ need not accept physician's opinion that is premised on subjective statements that lack credibility); Tonapetyan v.

Halter, 242 F3d 1144, 1149 (9th Cir 2001) (same). Because Dr. Brown did not opine that Kinzer was limited in any way not already encompassed by the ALJ's RFC assessment, Kinzer was not harmed by the ALJ's failure to discuss Dr. Brown's opinion.

Denise Busch, PMHNP, monitored Kinzer's mental health medication management until she left the VA mental health clinic in November 2004. At that point Carol Utterberg, PMHNP, assumed that role. Busch and Utterberg noted Kinzer's reports of irritability, intolerance of others' mistakes and insomnia. He reported that these symptoms worsened when he did not take prescribed medications. The nurse practitioners diagnosed recurrent major depression and chronic PTSD. They did not make findings or offer opinions on the functional limitations or work restrictions resulting from these conditions.

Kinzer argues that the ALJ failed to consider the opinions of Busch and Utterberg in violation of Social Security Ruling 06-03p. SSR 06-03p describes how an ALJ is to use the opinions of sources who are not "accepted medical sources," such as nurse practitioners, physician assistants and licensed social workers. In the present case, however, the two nurse practitioners did not make findings or offer opinions regarding the functional effects of Kinzer's PTSD and depression. They simply recited Kinzer's subjective reports and offered diagnoses. As noted previously, a simple diagnosis does not establish functional limitations. Key v. Heckler, 754 F.2d at 1549-1050; Young v. Sullivan, 911 F.2d at 183-184.

The ALJ considered the diagnoses of the VA nurse practitioners and reached reasonable conclusions regarding the functional effects they would have. Because the nurse practitioners offered no medical opinion about the severity of specific functional limitations resulting from Kinzer's mental impairments, the ALJ was not required by SSR 06-03p to discuss such opinions.

In summary, the ALJ did not reject the opinions of Drs. Monkarsh and Brown or nurse practitioners Busch and Utterberg. The ALJ's RFC assessment was entirely consistent with the functional limitations and work restrictions they found. To the extent the ALJ erred by failing to discuss their findings more fully, the error was harmless because these sources do not contradict the ALJ's conclusions.

### C.    **VA Disability Rating**

Kinzer received a service-connected disability rating of 70 percent due to PTSD, effective September 15, 1997. The rating decision noted that Kinzer appeared to be "moderately to severely industrially impaired, but he has been able to maintain employment." Tr. 97. The rating decision was not permanent because there was "a likelihood of improvement." Tr. 98. The VA granted Kinzer a 100 percent disability rating effective April 23, 2002, because he was "no longer working due to . . . service connected post traumatic stress disorder." Tr. 68. Kinzer contends the ALJ failed give his VA disability rating sufficient weight.

An ALJ must consider the VA's disability rating, but is not bound by the VA's findings. The VA and the Social Security Administration use different criteria for determining disability, and the ALJ may give less weight to the VA's disability rating if he gives persuasive, specific, valid reasons that are supported by the record as a whole. McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002).

The ALJ noted that the VA disability rating for PTSD predated Kinzer's alleged onset date by several years. Despite the rating, Kinzer was able to maintain employment until January 2001 and there is little to support his claim that he stopped working due to PTSD symptoms. At the time of the rating, Kinzer was expected to improve, and his reports to nurse practitioners Busch and

Utterberg suggest that he did improve with medication and had severe symptoms only when his medication ran out toward the end of the month.

The ALJ also relied on the anecdotal evidence suggesting that Kinzer gets along well with people. As described previously, Joyce Elkins and Michael Goldade provided lay witness statements describing Kinzer using good customer skills and engaging in unimpaired social interactions. Finally, the ALJ pointed out that the VA disability rating predated some of the medical and psychological evidence available to the ALJ.

Based on the foregoing, the court is satisfied that the ALJ did not arbitrarily disregard the VA disability rating. He considered the VA's findings and articulated adequate reasons for giving the disability rating discounted weight in his decision. McCartey v. Massanari, 298 F.3d at 1076. Accordingly, the ALJ's evaluation of the VA disability rating should not be disturbed.

**IV.    Vocational Evidence**

If a claimant is unable to perform work he did in the past, the Commissioner must show that other work exists in the national economy that the claimant can do. Andrews v. Shalala, 53 F3d at 1043. The Commissioner can satisfy this burden by eliciting a VE's testimony with a hypothetical question that sets forth all the limitations of the claimant. Id. The hypothetical question need not include limitations the ALJ finds unsupported by the record. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Here, the ALJ posed a hypothetical question that reflected all the limitations in his RFC assessment. Kinzer's challenges to the RFC assessment cannot be sustained for reasons described previously. Accordingly, the ALJ did not err by excluding additional hypothetical limitations to reflect subjective allegations which the ALJ found not credible and not supported by the record.

Kinzer's contention that the ALJ's determination was based on improper vocational testimony, therefore, cannot be sustained.

In addition, the ALJ's determination falls within the framework of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appenix 2. The Guidelines provide that a person of Kinzer's age should be found not disabled if he has acquired skills that are readily transferrable to a significant range of semi-skilled or skilled work within the person's RFC. To be transferable skills, there must be little, if any vocational adjustment required in terms of tools, work processes or work settings. 20 C.F.R. Pt. 404, Subpt. P, App. 2. § 202.00(f). The ALJ elicited testimony with the specific restriction on transferability of skills: "There must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." Tr. 469.

In response, the VE identified the occupation of mortgage accounting clerk which would require "essentially the same exact skill set with the same paperwork, everything he was doing. But it does not have the interaction with people or the greater level of skill in multitasking." Tr. 469. The VE identified two other occupations that would require little, if any vocational adjustment to utilize acquired skills.

In summary, the ALJ elicited vocational testimony that reflected all the functional limitations he found supported by the record. The VE provided vocational evidence that other work exists in the national economy that a person of Kinzer's age, education, work history and RFC can perform by utilizing acquired skills with little if any vocational adjustment. Accordingly, Kinzer's argument that the ALJ erred in relying on that testimony should be rejected and the ALJ's finding that work exists in the national economy that Kinzer could perform should be upheld.

## RECOMMENDATION

Based on the foregoing, the ALJ's findings and conclusion are based on correct legal standards and supported by substantial evidence. The Commissioner's final decision should be AFFIRMED.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due ~~June     , 2007~~ July 5, 2007. If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, the response is due no later than July 16, 2007. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

IT IS SO ORDERED.

DATED this 21 day of June, 2007.

_____
Thomas M. Coffin
United States Magistrate Judge

16 - OPINION AND ORDER